## Stringham v. Finch.

(Decided Nov. 29, 1932.)

J. H. HOLLADAY for appellant.

B. H. FARNSLEY and C. P. FARNSLEY for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

In this action for conversion brought by Irene Stringham against C. H. Finch to recover $1,000, the

trial court at the conclusion of the evidence directed a verdict in favor of defendant. Plaintiff appeals.

The facts are these: Appellee and appellant were good friends, and she was a frequent visitor in his household. She was also a chum of his sister-in-law, Miss Bauman, who lived with appellee and his wife. In August, 1925, appellee moved to Florida. According to appellant, she said to him before he left for Florida, "If you see anything good in Florida, let me know." About the middle of October she received from appellee the following letter from Miami Beach, Florida, dated October 15, 1925:

"Miss Irene Stringham, Louisville, Ky.

"Dear Irene: I wired you tonight a night letter telling you about a bargain I had picked up today.

"This lot joins one I am buying lies well in a growing section and believe I can turn for you in 3 mos or perhaps sooner and make you $1,000.00 on your investment.

"I wired you it would take $1,125.00 but we are making an offer so we can we hope get for $1,000.00 but in the event we do not get at our figure will close at theirs as this is a real Bargain and I urge you to take this on. I am putting up the cash to bind the deal and you will not have to send me your money until about Nov. 10th or have it to me by that time as we will have to close on Nov. 15th and as the mails are so uncertain should get it to me by that time to enable me to close the deal.

"This is a wonderful opportunity and hope you will buy this.

"We had a dandy trip home and Carrie sure was glad to see me.

"Sends love as well as myself.

"Let me hear at once.

"Yrs                              Curry

"1008 5th St., Miami Beach, Fla."

She also received the following night letter dated October 16, 1925:

"Miss Irene Stringham, Care A Engelhard & Sons, Louisville Ky

"Have today picked up exceptional bargain will take eleven hundred twenty five cash am taking on same thing and advise you to take this on will undoubtedly make fifty to hundred percent profit inside of three months Must have money within thirty days Wire me at once

"C. H. Finch."

Immediately on receipt of the letter, and before she received the telegram, she withdrew $1,125 from her savings account and sent it to appellee. The latter part of October she received from appellee the following letter, dated October 25, 1925:

"Miss Irene Stringham Louisville Ky

"Dear Irene: Your letter enclosing New Yk Exchange for $1,125 came yesterday.

"After I wired you we ran into several pieces of property in the same vicinity that looked so good to us that we wanted to buy and not having enough cash to tie it all up we decided to form a small pool among a few of our friends which we did and have options on several other pieces.

"In doing this we all took units of $500.00 each so to make yours even I am enclosing my check for $125.00 and this makes you have 1,000.00 or two units.

"I certainly appreciate the confidence you have placed in me and believe by forming this pool we will be able to make more money as we will go ahead and reinvest as fast as we can in good quick moving property and hope to make several turns by Jany 1st and by having the property in the pool can go ahead and turn it without the delay of sending papers away to be signed thereby saving a great deal of time.

"If you can come in for more units let me know at once as we must close the Pool Nov 1st in order to close the option we have.

"If you know of anyone who would like to come in on this pool have them send in the money to me

at once as we close the Pool Nov 1st and money must be here Monday Nov 2nd as that is the day we must close options.

"In the event you come in or any one else you know wants to come in wire me collect saying how many units they are coming in for so we will know what to do about another option we would like to take.

"Our idea is to close the Pool Nov 1st and then Jany 1st Balance up and start another Pool at that time.

"Carrie joins me in love to all

"Yours                                    C. H. Finch.

"1008—Fifth St. Miami Beach Fla."

After receiving the above letter, appellant claims that she immediately wrote appellee that she did not authorize him to invest her money except in her own name, and demanded the return of her money. About a month or six weeks later she wrote him a second letter to the same effect. Though claiming that it did not reach her until some time during the year 1926, appellant admitted receiving the following receipt:

" Miami Fla   Oct 1/25 1925

"Received of Irene Stringham One Thousand and no/100 Dollars for Investment in a Pool in Miami

"Geo A Mell Treas

"$1,000.00                              By C. H. Finch."

No portion of the $1000.00 has ever been returned to her.

According to appellee, appellant told him in the month of August that if he got to Florida and saw any chance to make some money to get in communication with her, that she had some money which she would like to invest in property in Florida. He moved to Florida in August, and about the 1st of October was back in Louisville. At that time appellant again expressed a desire to make an investment in Florida property, and he told her that they had in mind the forming of a small pool among his friends in Florida, and if she wanted to

get in on the pool they would be glad to interest her in it. On his return to Florida a pool was formed made up of units of $500 each. Of these units appellee took one, his sister-in-law one, Mrs. Elmer Kramer two, B. E. Rainey, three, Mrs. Rebecca Grant, George A. Mell, Mrs. J. F. Clark, and Mrs. C. F. Wilkinson one each. Two units were also taken in the name of appellant. With the money thus furnished, several Florida lots were purchased and conveyed to George A. Mell, treasurer, for the benefit of the pool. After the purchase and payment of taxes on the property, there remained in the hands of Mell, the treasurer, the sum of $213.73. Within a short time after the property was purchased, the boom collapsed, and the property is now of but little value. After his letter to appellant stating that a pool had been formed, appellee claims that he never received any letter from appellant stating that she did not want her money invested in the pool, and demanding its return. Appellee was fully corroborated by George A. Mell, the treasurer of the pool, who holds deeds to several pieces of property purchased. However, these deeds were not put to record until after this action was brought.

In rebuttal, appellant testified that appellee said nothing to her about the pool; that all that was said was, "if you see anything good in Florida, let me know." She also added that it was her intention that the money should be invested in her name alone.

In the original petition the facts pleaded were these: While defendant was in the state of Florida he communicated to her that there were some wonderful opportunities for investment in real estate there, and informed her that if she wished to invest some money for herself to send it to him, and he would invest it for her. Relying on his judgment and integrity, she, on or about October 25, 1925, sent him the sum of $1,125 to be invested for her as above set out. The money was received by defendant, but, instead of investing it as he promised, he returned the sum of $125 and converted the sum of $1,000 to his own use. After she learned that defendant had not invested the money for her, she made demands on him to return the $1,000, which he has failed and refused to do. Defendant has unlawfully and wrongfully converted the $1,000 to his own use, and still withholds possession thereof. After appellee had filed an

answer denying the allegations of the petition and setting forth the formation of the pool and its purchase of the property, etc., appellant filed an amended petition containing, in substance the following averments: While defendant was in the state of Florida, he communicated to her that he could procure for her an exceptionally good investment in a particular piece of real estate in Florida, a lot joining one that he was buying, and represented to her that he believed he could make for her the sum of $1,000 if she would send him the sum of $1,125 for him to invest in said lot. On or about October 25, 1925, she sent the defendant the sum of $1,125 to be invested for her in this particular lot, the lot adjoining the one which defendant was buying, and which was represented by defendant as being such a wonderful investment. The money was received by defendant, but, instead of investing it as he promised, he returned the sum of $125 to her and converted the sum of $1,000 to his own use. After she learned that the defendant had not invested the money for her as was agreed, she made demand on him to return her the $1,000 which defendant failed to do. Defendant has unlawfully and wrongfully converted the $1,000 to his own use, and still withholds said money, and, by reason of said conversion and refusal to return her money, she has been damaged in the sum of $1,000, with interest from October 25, 1925.

It will be observed that the case pleaded is that appellant sent money to appellee to be invested in her own name in a particular piece of property, and that he converted the same to his own use, but no such case was proved. It may be that, if appellant had alleged and proved that she instructed appellee to buy a particular Florida lot in her name and sent him the money for that purpose, and he, in violation of his instructions, invested the money, along with the money of others, in other property, appellee would be guilty of conversion. But that is not this case. The material facts are admitted, and we must look at the transaction as a whole. Appellee was not an agent who was to be paid a commission for his services. He and appellant were friends, and he was acting solely in the capacity of a friend. Appellant first approached the subject, and, even if there was no mention of the formation of a pool, she admits that she said to appellee, "If you see anything good in Florida, let me know." It is apparent that she

was relying upon appellee's judgment, and sent him the money to invest. It may be that she gained the impression from his first letters and telegram that he was to buy a particular lot in her name, but she gave him no specific instructions to that effect. It is clear that appellee acted in the utmost good faith. He invested his own money, and that of his sister-in-law, in the same property. In doing this, he did not violate specific instructions, and one occupying his position would naturally infer that he was authorized to use his own discretion in making an investment of the money. In the circumstances, the investment of appellant's money, along with that of others, in several pieces of property, and the taking of the deeds in the name of one of the others for the use and benefit of all, was not such a substantial departure from the general scope of his powers as to make him liable for conversion. McMorris v. Simpson, 21 Wend. (N. Y.) 610. A different question would be presented if it had been made to appear that appellant prior to the formation of the pool and the investment of the money, had notified appellee that she did not want her money invested in that way. But, even if it be admitted, as it must be, for the purpose of determining whether the peremptory instruction was proper, that appellant did so notify appellee, it was not made to appear that the notice was sent prior to the formation of the pool and the investment of the money. It follows that the directed verdict was proper.

Judgment affirmed.